of other states. See Baldwin v. Hale, 1 Wall. [68 U. S.] 234; Hale v. Baldwin [Case No. 5,-913], citing above case.

---

## Case No. 3,781.

### In re DE METZ.[1]

District Court, D. New Jersey. Sept. 6, 1872.

PARTNERSHIP—EVIDENCE OF—BANKRUPTCY—
PROOF OF CLAIM—COSTS.

[1. One who—partly through friendship, and partly through a desire to promote a profitable business, in order that he may receive payment of an antecedent debt—advances money to another for the purchase of materials to be manufactured, retaining a lien thereon as security, will not be *held* liable as a partner merely because of his debtor's representation to that effect, made without his knowledge or authority, coupled with the fact that he looked carefully after the property, which constituted his only security, and was consulted and gave his assent to a sale thereof to his debtor's brother.]

[2. Costs will not be allowed to a claimant in bankruptcy proceedings, who, by failing to make a clear and frank disclosure of the transactions on which his notes were founded, misleads the assignee so as to cause delay and expense in the proof of his claim.]

[In bankruptcy. In the matter of Leonce De Metz. On objection to proof of claim of M. G. Lane.]

There is a lack of precision and distinctness in stating the objections to the proof of this claim, which has somewhat embarrassed me in their consideration, and these objections may be reduced in substance to the following: (1) Because the personal property sold by the claimants to George De Metz, and by the latter to the bankrupt, was in fact the property of the claimant, and liable for the debts of Lane and George De Metz, and hence that said sales were fraudulent, covinous and void. (2) Because at the time of the said sales and transfer of the property to the bankrupt the claimant and George De Metz were partners doing business under the name of the "American Zinc Works," which owed debts and was insolvent. (3) Because the bankrupt, although not a partner, was the superintendent for the firm, and had been and was held liable by the creditors for the debts of the firm. (4) Because the sale to the bankrupt was a device to deceive the creditors of Lane and George De Metz. Upon the argument the counsel for the bankrupt and assignee put himself mainly upon the ground of a failure of consideration for the notes proved by the claimant, which may be regarded and treated, not as a new reason, but as the legal result of some of the foregoing objections.

The testimony taken and relied upon to sustain these objections is very voluminous. I have given it a close examination, and I think this state of facts is made to appear.

---

[1] [Not previously reported.]

In the summer of 1869 one George De Metz, a brother of the bankrupt, and Albert Harnickle, established at Elizabethport, New Jersey, a manufactory for the purpose of converting spelter dross into zinc. Their means being limited, they prevailed upon the claimant—who was a friend of both, and who had special reason to be interested in George De Metz, as his intended son-in-law—to loan to them his credit in the purchase of the raw material from which they were to manufacture a marketable product. An arrangement was made with Ackerman, a dealer in new and old metals in New York, by which Lane was to be responsible to him for all the dross and zinc skimmings furnished by him to the American Zinc Works, the manufactured article to be sent to Ackerman for sale, and out of the proceeds Lane to be secured for his advances in the purchase of the raw material, and the residue to be paid to the concern for profit. Matters not succeeding satisfactorily under Harnickle's management, he withdrew from the firm in the latter part of the year, and the business was continued by George De Metz alone, his brother, Leonce. the bankrupt, being taken in as superintendent in the place of Harnickle. It does not appear that any other arrangement was made for supplying the new firm with the raw material. Mr. Lane still remained responsible to Ackerman, who seems to have furnished all that was used in carrying on the business. The zinc dross and skimmings were stored by Ackerman in New York, on account of Lane, and were forwarded to De Metz, at Elizabethport, as he required the same for manufacture. In February, 1870, at the suggestion of some of the parties, it was agreed that the factory building at Elizabethport should be used for the storage of the raw material furnished by Ackerman on the credit of Lane,—the latter claiming ownership in the property until he paid his advances thereon to the former. Upon its delivery, Metz gave to Lane a receipt as follows: "New York, February 14, 1870. Recd. of M. G. Lane, on storage. 113,-000, or about, of galvanized zinc, and 25.000 pounds of zinc skimmings, to be delivered to. said M. G. Lane at any time on his order, or any part thereof. George De Metz." Thus matters stood until March 12th following, when a contract was entered into between George De Metz and Lane that the former should purchase all the material on hand at the price of $3,616, Lane holding his lien upon the same until the sum was paid to him. The business failed under George De Metz's management; the factory was closed, and Lane was largely out of pocket for advances made to him. In September, 1870, his brother, Leonce, proposed to purchase the concern; had an interview with Lane about it; met him subsequently, with George and Ackerman, at the store of the latter; and finally agreed to pay for all the property and good will of the establish-

ment the sum of $4,500; $100 in cash and 22 promissory notes for $200 each, payable monthly. A bill of sale was executed by George to Leonce, specifically enumerating the property, and warranting the title against all claims bearing date September 13th, 1870. and the 22 notes were drawn to the order of George De Metz, and were endorsed by him to the claimant, who took them in lieu of notes of equal amount which he held against him. The one first maturing was paid, and the other 21 notes, of $200 each, constitute the claim of Lane, the proof of which is sought to be set aside.

Without considering in detail the several objections urged against the claim, it is only necessary for me to say that the evidence in the case does not seem to sustain any of them. Lane's conduct in and connexion with the business from the start may be satisfactorily explained without assuming that he was a partner therein. De Metz and Harnickle were his friends, and, as it appears, were also his debtors, arising from other business transactions, and he was probably influenced by mixed motives in his endeavours to assist them in this new enterprise. He desired to befriend them, if he could do so without incurring too much pecuniary risk. He doubtless hoped they would succeed, both on their own account, and also in reference to the payment of the other claims which he held against them. I find no evidence which is not explainable upon other grounds than that he was a partner.

"A partner is liable," says Parsons, in his treatise on Partnership (page 31), "either because he is in fact a partner, or that he ever said that he was or that he suffered himself to be held out as one." That George De Metz admitted or alleged that he was did not make him one, or fix any liability upon him as such, unless Lane knew of it, assented to it, or suffered others to act upon the information without correction. It will hardly be safe to infer a partnership because he was anxious for the success of the firm, or because he looked carefully after property which he reckoned his only security for advances made, when such conduct can be so readily accounted for from the pecuniary interests involved, and from the personal relations existing between them. If he was not a partner, then his assent to the sale from George De Metz to the bankrupt, we may presume, only had reference to the lien which he claimed to hold upon a portion of the property. That is a sufficient explanation as to why he was consulted by them both as to the sale by the one and the purchase by the other.

The other material allegation, that the consideration for the notes failed because the property sold by George to Leonce was subsequently taken to pay the debts of the old firm, is founded upon a misapprehension of the facts of the case. George warranted the title of the property in his bill of sale to his brother. That title has not been impeached. A portion of it was, indeed, taken to pay a debt of the former partnership, upon the allegation that Leonce was a member of the firm. But it was seized as his property, not as Lane's or George De Metz's, and hence the validity of the transfer from George to him was fully recognized, not disregarded. It was held in judicial proceedings taken that Leonce had acted in such a manner in the conduct of the former's business, that he had rendered himself legally liable as partner. But upon what principle can Lane be held responsible for that? There is no evidence that he either did or said anything to conduce to such a result.

Upon the whole case I am of the opinion that the objections to the claim must be overruled.

Whether I should allow to the claimant his costs in these proceedings is a different question, as he seems, at least in part, responsible for them. The twenty-second section of the bankruptcy act [of 1867 (14 Stat. 527)] requires that, in order to entitle the claimant to have his demand against the estate of the bankrupt allowed, his proof of claim inter alia must set forth the true consideration of the debt or demand. It has been held under this section that when the debt consists of a promissory note the proof ought to set forth the consideration of the note,—In re Loder [Case No. 8,456],—and that it is competent for the register, or the court, after exceptions made, to allow any mistake or defect in the proof to be amended,—In re Elder [Id. 4,326]. In the present case the claimant has not fully and fairly stated the consideration of the notes, which evidence his claim against the bankrupt's estate; but I think this defect of proof has arisen rather from a misapprehension of the register, arising from the want of clearness in stating the transaction by the claimant, than from any wilful or fraudulent suppression of the facts by the claimant. With this view, in the absence of fraud, I recognize the right of the complainant to explain the proof made, and, if need be, to amend it. But I have the impression that the assignee has been misled by this lack of exactness in revealing the consideration of the claim, and that expense and delay have been made, by the claimant, because he did not more frankly and clearly expose the whole transaction to the register. This at least would be the natural tendency and result of such defective proof. Under the circumstances I am not willing to allow his costs, but order each party to pay their own.